# Scott v. Commonwealth.

(Decided June 23, 1933.)

O. C. HALL for appellant.

BAILEY P. WOOTTON, Attorney General, and FRANCIS M. BURKE, Assistant Atorney General, for appellee.

OPINION OF . THE COURT BY JUDGE DIETZMAN—Affirming.

Appellant was indicted for the offense of murder. His first trial resulted in a hung jury, but his second in a verdict of guilty with the punishment of death attached. From the judgment entered on that verdict, this appeal is prosecuted.

The facts of the homicide are, so far as this record is concerned, undisputed. Appellant and his wife seem to have had a quarrel, and she had left his home. Suspecting that she was being harbored by Martin Stephens and his wife, the appellant came to the Stephens home and in a boisterous manner demanded to know if his wife were there. As a matter of fact, no one was there except Martin Stephens and his infant child whom he had upon his arm. On being informed by Stephens that appellant's wife was not there, appellant demanded that he be shown through the house so that he could see for himself. Stephens complied with appellant's demand and showed him through the house. When they came back out upon the front porch, Stephens sat down in a rocking chair with his infant upon his arm. As he was thus seated, appellant drew his pistol and fired

twice at Stephens, inflicting wounds upon him from which he soon died.

As grounds for reversal, appellant contends, first, that the court erred in sending to Pike county for the jury which convicted him. The record discloses that on the first trial of this case not only was the regular panel exhausted in the effort to obtain a jury, but likewise a special venire of eighty-two members was required before a jury could be secured from Floyd county to try the case, and even then the trial which followed resulted in a hung jury. On the second trial the regular panel of Floyd county jurors was exhausted in the effort to obtain a jury with only five jurors having been tentatively accepted. At this state of the proceedings, the commonwealth's attorney moved the court for a change of venue, or, failing that, for the summoning of a jury from an adjoining county, basing his application on the ground that the appellant and the deceased were both widely related in Floyd county, that the case had been widely discussed over the county, and that the former trial had resulted in a hung jury, from all of which he asserted that it would be impossible to get a jury from the county that would render a verdict in the case. The commonwealth produced no affidavits in support of these statements, but the court sustained the latter alternative of the motion of the commonwealth's attorney and had a jury summoned from Pike county which tried this case. Relying on section 194 of the Criminal Code of Practice and the case of Alsept v. Commonwealth, 245 Ky. 741, 54 S. W. (2d) 337, appellant insists that it was error to summon the jury from Pike county until a fair effort to obtain a jury from Floyd county, the place of the homicide and the trial, had been had. In this Alsept Case, the record disclosed that the trial court on the motion of the commonwealth's attorney and without more had summoned a jury from another county, nothing appearing in the record as to any effort having been made by the trial court to secure a jury from the county in which the trial was being had. It was therefore held that section 194 of the Criminal Code of Practice had been plainly violated. In the case before us, we find that the trial court knew that on the first trial of this case not only was the regular panel exhausted but a special venire of eighty-two members was also exhausted before a jury could be

obtained. That jury hung. In the effort to obtain a jury on the second trial, the regular panel was exhausted with only five jurors tentatively chosen. The court knew whether or not the accused and his victim were widely connected in the county and no doubt knew of the state of sentiment in the county. With all this, and having experienced the difficulties in obtaining the jury from Floyd county on the first trial, and having made the effort to get a jury from that county out of the regular panel on the second call of the case, he was not required to go further and do the foolish and expensive thing of summoning in a lot of jurors who would in all probability not qualify, and, even if they did, would in all probability compose a jury which would hang again. There was no abuse of discretion under such circumstances in summoning the jury from Pike county.

It is next contended that the verdict is flagrantly against the evidence, and this because the jury disregarded the defense of insanity advanced by the appellant. His evidence to sustain that defense was very feeble. On his last trial, appellant testified that he remembered nothing from about noon of the day of the homicide until the next morning and answered all questions concerning the transactions of that day in substance that "he did not remember." There was some evidence of lay witnesses introduced by him to show that at times he acted queerly or abnormally, but on cross-examination most of these witnesses disclosed that, when he acted in this fashion, he was drinking. The commonwealth produced an abundance of testimony, both lay and medical, to the effect that appellant was sane at the time of the homicide and of his trial. This issue of insanity was one for the jury, and not only was their verdict to the effect that appellant was sane not against the evidence, but, indeed, in accord with the great weight of the evidence.

Lastly, appellant insists that the commonwealth was permitted to introduce in rebuttal evidence which should have been introduced in chief. This was evidence bearing on the question of appellant's sanity. Part of this evidence was testimony as to how the appellant had testified on his first trial. On that trial, he had not attempted to plead insanity, but self-defense, and had given his version of the transactions of the day. This evidence was brought forward by the common-

wealth not only to refute appellant's position on the second trial that he did not remember the transactions of the day, but also to show that he was entirely sane then and made no claim to insanity, but rather to that of self-defense. It is settled that, until an accused raises the question of his sanity, the commonwealth is not obliged to establish that he is sane, being entitled to rely on the presumption of sanity. Further, where the accused raises by his evidence the issue of his sanity, then the commonwealth in rebuttal is entitled to produce its evidence bearing on that question. See Berry v. Commonwealth, 227 Ky. 528, 13 S. W. (2d) 521. Hence there was no error in the order of the introduction of the commonwealth's evidence in this case.

Perceiving no errors, the judgment is affirmed.

Whole court sitting.